CONSUMERS DISTRIBUTING COMPANY LIMITED, Appellant, v. E.T. HERMANN AND JANE HERMANN, TRUSTEES of the E.T. AND JANE HERMANN 1978 LIVING TRUST, Respondents.

No. 21184

June 6, 1991 812 P.2d 1274

*John Nicholas Schroeder,* Reno; *Zankel & McGrane* and *Michael Patrick Carbone,* San Francisco, California, for Appellant.

*Woodburn, Wedge & Jeppson* and *Lynne K. Jones,* Reno, for Respondents.

**OPINION**

*Per Curiam:*

Appellant Consumers Distributing Company Limited (Consumers) is a corporation engaged in the business of marketing and distributing a variety of products including sporting goods, sportswear, household goods, and small appliances through cata-

logues and catalogue stores. Consumers leased warehouse space in Sparks, Nevada, for a five-year term with an option to renew. The E.T. and Jane Hermann 1978 Living Trust (Trust) is the successor in interest to the lessor and the current owner of the warehouse which is the subject of this litigation.

The leased premises, built specifically for Consumers, consists of 250,560 square feet of warehouse space, with offices on a mezzanine level, plus a separate truck trailer parking area. The lease agreement was executed on September 9, 1982, and included the following relevant terms: The lease would run for sixty months commencing June 1, 1983. Consumers would pay $44,123.62 a month for the warehouse building and $14,000.00 for the trailer parking area for the first year of the lease, and $11,000.00 for each subsequent year. Consumers would also pay additional amounts such as operating expenses and property taxes. The lease imposed a penalty for payments made more than fifteen days late. This penalty equaled four percent of the amount due plus eighteen percent interest, and would apply to all amounts owed including rent, operating expenses, or taxes. The lease required that Consumers tender a security deposit equal to one month's rent and that the Trust place the security deposit in a separate interest-bearing account and assign the interest to Consumers.

Consumers tendered the security deposit and paid the monthly rent for the entire five-year term. It also paid many of the operating expenses and taxes. However, the parties dispute the amounts and timeliness of some of these payments and the trial court found that Consumers still owed $75,208.00 in operating expenses, taxes, and interest to the Trust.[1]

Sometime in 1986, Consumers decided to close its Sparks facility and informed the Trust of its intentions. Consumers asked to terminate the lease as of April 1987, but the Trust refused because the building would be difficult to relet. Therefore, Consumers remained bound to the terms of the lease and continued to pay rent until the lease expired in May, 1988. On June 3, 1988, Consumers wrote to the Trust confirming that the lease had expired and requesting return of its security deposit.

The lease required that the lessee return the premises in the same condition in which it was received. However, the warehouse needed about $11,000.00 worth of repair work. Several months before expiration of the lease, the Trust agreed to make a

---

[1]This amount includes penalties and interest. Consumers does not contest that it owes operating expenses and taxes, but it does assert that the Trust waived its claim for penalties and interest. Without these extra costs, the amount that Consumers does not contest equals $33,573.12.

list of items it wished to have repaired. However, this list was not delivered until May 12, 1988—twenty-three days before the lease expired. Upon receipt of the list, Consumers hired a contractor to make the repairs. A Consumers' employee oversaw the construction which lasted until mid-September.

In mid-October, the Trust reentered the premises, changed the locks on the doors, and requested that Consumers turn over the core pulling keys. These are keys that remove the lock core cylinders and permit the user to change the locks so that they can be opened by different keys. Consumers delivered the core pulling keys on about November 10, 1988. Even without the core pulling keys, the lock cylinders could have been replaced at a cost of $25.00 each.

The Trust asserted that Consumers was a hold over tenant and demanded rent payments until November 1988, when Consumers turned over the core pulling keys. The Trust also asked for penalties and interest that had accrued over the last five years on payments that Consumers had made late. Previously, the Trust generally refrained from demanding that Consumers pay its late fees.[2] Consumers disputed that it held over, and this litigation ensued.

The Trust brought three causes of action for breach of the lease agreement, one for unjust enrichment for Consumers' occupation of the premises without paying all expenses it had contracted to pay, and one for rent pursuant to a holdover tenancy. In a bench trial, the court found that Consumers was a holdover tenant because it did not surrender the premises until November, 1988, and that the Trust properly applied the security deposit to Consumers' defaults on payments due pursuant to the lease. The Trust was awarded $423,058.16 which was comprised of: (1) unpaid invoices for operating expenses, (2) repair costs (for repairs which were made after the Trust retook the premises), (3) trailer storage area rent, (4) holdover warehouse rent, (5) holdover common area maintenance charges, (6) late charges and interest accruing until the date of trial on all of the above listed items, and (7) attorney's fees and costs. Then the court subtracted the security deposit from this amount to reach the amount awarded to the Trust.

On appeal, Consumers asserts that it did not hold over past the termination of the lease. It asserts that the Trust knew that it had

---

[2]Consumers had been paying its invoices late each month. Instead of charging it the appropriate penalties and interest, the Trust chose to deal with delinquent payments in a way that contravened the terms of the lease. In 1985, the Trust transferred Consumers' security deposit, $44,123.62, to its own name and started paying the interest to itself.

relinquished possession, and that neither the demised condition of the premises, the unwanted property left on the premises, nor the failure to return the keys rendered it a holdover tenant. It concedes that it is liable for some invoices that it left unpaid and for amounts the Trust expended to repair the premises. Consumers also asserts that it should not have to pay the harsh late penalty and interest rate because (1) the Trust waived its right to impose these penalties by never demanding them over the last five years, and (2) the rate was at a usurious level and therefore should be void even though Consumers had agreed to those terms in the contract.

We agree with Consumers that its course of conduct did not amount to a holdover. Therefore, Consumers only remains liable for any amounts it previously owed to the Trust and for the cost of repairs. In addition, the Trust acted in contravention of the lease terms when it transferred the security deposit into its own name and kept the interest from the account. Therefore, the Trust must compensate Consumers for these wrongfully withheld interest payments. Finally, we conclude that Consumers is not liable for any interest or penalties for previous late payments. Although the clause providing for these penalties was valid, the Trust waived its right to enforce the penalty provision by its consistent failure to demand interest and penalties over the lease term.

## I. *Holdover Rent:*

Courts generally agree that whether the tenant's failure to repair amounts to a holdover is a question of fact to be decided in light of the surrounding circumstances. *See, e.g.,* Caserta v. Action for Bridgeport Community, 377 A.2d 856 (Conn.App. 1976) (leaving personal property on the premises may constitute holding over; this is a question of fact for the trial court); Comedy v. Vito, 492 A.2d 276 (D.C.App. 1985) (small amount of property left on premises was not a holdover); Hoopes v. Prudential Ins. Co. of America, 362 N.E.2d 802 (Ill.App. 1977) (keeping the key and leaving the lights on was not a holdover); Huff v. Northern Pacific Ry. Co., 228 P.2d 121 (Wash. 1951) (whether leaving property on the premises amounts to a holdover is a question of fact). These cases show that a trial court may impose a holdover tenancy if the vacating tenant leaves the premises with substantial damage or in an unusable condition.

The Trust asserted and the trial court believed that the damage to the building was extensive. The trial court based its finding on

the fact that pictures of the warehouse depicted a need for numerous repairs. However, the actual cost of repairs only amounted to about $11,000.00, a figure which equaled less than one-fourth of one month's rent, or one-fourth of the security deposit. In spite of how the warehouse may have appeared, these figures show that the damage was not extensive enough so that operation of law should create a holdover. Also, the Trust made no showing that it cared when Consumers vacated, or that it would have made efforts to relet the warehouse if it had been in top condition. Consumers had vacated the warehouse many months before expiration of the lease and had tried to convince the Trust to terminate the lease early. The Trust refused this request, but never informed Consumers that it would impose a holdover if the warehouse needed repairs. In addition, the Trust dragged its feet in informing Consumers what repairs it would require, by waiting until just before expiration of the lease to deliver the list of necessary repairs.

The Trust asserts that Consumers held over because: (1) Consumers remained in possession of the premises to oversee repairs after expiration of the lease term, (2) Consumers continued to pay the utility bill for the premises, and (3) Consumers neglected to turn over the core pulling keys, denying the Trust access to three offices in the building. None of these reasons constitutes sufficient grounds to impose a holdover. Consumers' acts of overseeing construction and paying the utility bill show that it took its obligation to repair seriously. These acts should not be used against it to show that it did not relinquish possession. Also, the cases listed above all agree that the failure to return keys does not constitute a holdover.

If the Trust had made some showing that it encouraged Consumers to have the premises repaired upon the expiration date or that it completed its obligation to make a list of necessary repairs in a timely fashion, then we would be more inclined to uphold the imposition of a holdover tenancy. However, the Trust concedes that if Consumers had abandoned the premises and left the repairs for the Trust to complete, there would be no holdover. Under these circumstances, Consumers should not be penalized for merely completing an obligation.

In addition, the Trust makes no showing that it could have relet the premises had Consumers completed the repairs on time. We do not hold that a landlord's failure to produce a prospective tenant negates the possibility of a holdover, for poor conditions of the property may scare away such prospects, and a landlord

should not be forced to lose income because of a prior tenant's failure to repair. However, a landlord must show some effort to get the old tenant out and a new tenant in before operation of law will impose a holdover tenancy.

## II. *Late Penalties and Interest:*

Consumers asserts that the rate of penalties and interest imposed by the contract was usurious and should be void as a matter of law. However, Nevada has no statute which precludes high interest rates. Instead, NRS 99.050 states that,

> Parties may agree for the payment of any rate of interest on money due or to become due on any contract, for the compounding of interest if they choose, and for any other charges or fees. The parties shall specify in writing the rate upon which they agree, that interest may be compounded if so agreed, and any other charges or fees to which they have agreed.

Since Consumers entered into this lease contract at arms length, it may not assert that now, the terms of the contract are unfair.

However, Consumers is correct in its assertion that the Trust waived its right to collect penalties and interest. The Trust never computed or demanded payment of late penalties or interest for the entire five years of the lease term. Therefore the Trust lulled Consumers into believing that it was not required to pay the penalties, and should be estopped from imposing the penalties now. This reasoning, however sound, creates some friction when compared with section 26 of the lease, entitled "Waiver," which states that,

> The waiver by Lessor of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant, or condition or any subsequent breach of the same or any other term, covenent or condition herein contained. The subsequent acceptance of rent hereunder by Lessor shall not be deemed to be a waiver of any preceding breach by Lessee of any term, covenant, or condition of this lease, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.

Consumers asserts that this clause should be unenforceable because acceptance of a debt without reservation of one's right to

receive more, denotes satisfaction of that debt. *See, e.g.,* Burstein v. Liberty Bell Village, Inc., 293 A.2d 238 (N.J.Super. 1972). The facts in *Burstein* are quite similar to the case at bar. In *Burstein,* the lease contract had a non-waiver provision similar to the one in this case. At the end of the lease term, the landlord deducted all the late payments that he had not charged to the tenant from the security deposit. The court decided that in spite of the non-waiver provision, a lessor is estopped from asserting a forfeiture for a breach of a lease condition when he accepts rent with full knowledge of the breach. *Id.* at 239-240. For the same reason, the Trust is now estopped from charging late penalties and interest.

We decline to adopt the *Burstein* rule across the board. This non-waiver clause, which allows a landlord to accept rent without waiving late penalties or interest, is generally enforceable. Restatement (Second) of Property, *Landlord and Tenant,* § 12.1 comment c (1977). However, parties may not sit on their rights forever, and such clauses retain their force and effect for only a reasonable amount of time. It is unconscionable for a lessor to assert this provision after it has continually refrained from collecting the penalty for a long period of time. We conclude that five years was too long a time for the Trust to wait before demanding the penalty. Therefore, it has waived its right to collect the penalty now.

### III. *Interest on the Security Deposit:*

The lease required that the Trust hold the security deposit in a separate interest bearing account and pay the interest to Consumers. However, the Trust started paying the interest to itself in March 1985, under the theory that defaults by Consumers amounted to more than interest from the deposit. Although Consumers was in default on certain amounts owed, the Trust wrongfully withheld interest because it never demanded that Consumers pay the penalties, and never provided Consumers with an accounting showing the amounts which satisfied Consumers' debts. A landlord must provide its tenant with an accounting when it withholds funds, whether or not the lease contract provides that the tenant is entitled to the accounting. *See, e.g.,* Chinese Hospital Foundation Fund v. Patterson, 81 Cal.Rptr. 795 (Ct.App. 1969) (tenant should receive interest on security deposit so long as landlord retains it); Pasadena Hudson, Inc. v. Maggiora, 321 P.2d 852 (Cal.App. 1958) (tenant is entitled to know

the formula by which interest on its security deposit should have been calculated).

### Conclusion:

Since Consumers is not liable for holdover rent or penalties or interest, the only amounts that it still owes to the Trust are: (1) amounts owed for invoices as of May 1, 1988, (2) costs of repairs completed by the Trust, and (3) unpaid trailer storage area rent. However, the Trust must return to Consumers the entire security deposit, as well as any interest that accrued on the deposit since March 1985. Also, since most issues on. this appeal have been resolved in favor of Consumers, we vacate the award of attorney's fees and costs which the trial court granted to the Trust.

Accordingly, we reverse the judgment imposing a holdover tenancy and remand this matter to the district court for further proceedings consistent with this opinion.