J.M. BEALS ENTERPRISES, INC., Plaintiff-Appellee, v. INDUSTRIAL HARD CHROME, LTD., f/k/a C.G. Therkildsen, Inc., *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—93—3390

Opinion filed March 10, 1995.

Daniel P. Albers, of Coffield, Ungaretti & Harris, and Andrew H. Perellis and Jennifer T. Nijman, both of Seyfarth, Shaw, Fairweather & Geraldson, both of Chicago, for appellants.

Bruce A. Salk and David J. Seery, both of Cohen, Cohen & Salk, P.C., of Deerfield, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Industrial Hard Chrome, Ltd. (IHC), appeals from an order of summary judgment in favor of the plaintiff, J.M. Beals Enterprises, Inc. (Beals), who filed a complaint alleging that the defendant was a holdover tenant pursuant to the Illinois holdover statute (735 ILCS 5/9—202 (West 1992)). The order assessed damages for double rent in the sum of $35,519.40. IHC argues that summary judgment was improperly granted because, it maintains, questions of material fact remain unresolved.

The material facts are not in dispute and are based on the pleadings, exhibits, excerpts of the depositions of George Therkildsen, the owner of IHC, James M. Beals, the owner of Beals, Jeffrey Hayes and Sieghard Strelau, employees of IHC, and Gary Gunderson, a general contractor hired by Beals, and the affidavit of Jeffrey Hayes.

Therkildsen purchased IHC from Beals in 1985 after working for Beals as its manager for 10 years. The real property was not purchased, and Therkildsen entered into a lease for the premises on or about October 18, 1985. The lease was for a term of seven years and was to expire on December 31, 1992. In July 1992, a dispute arose between Beals and IHC about what equipment and materials belonged to IHC under the purchase agreement and what IHC's responsibilities were with respect to the condition of the premises at the end of the lease.

When Beals and IHC were unable to resolve the dispute, Beals filed an action for a temporary restraining order and preliminary injunction in November 1992, to prevent IHC from removing certain equipment and materials from the premises. IHC agreed to the temporary restraining order and entered into negotiations with Beals that resulted in a settlement agreement, dated December 10, 1992, which provided that certain equipment was to remain on the premises and that IHC was required to move certain other equipment. All removal work was to be completed by IHC by December 31, 1992, which was also the date of the expiration of its lease.

IHC tried to complete the work pursuant to the settlement agreement, but "despite its best efforts to do so, it was unable to complete the work" and requested an extension from Beals. IHC stayed on the premises after December 31, 1992, "solely to fulfill its obligations pursuant to the settlement agreement." IHC's request for an extension from Beals to complete the work was denied by Beals, which served a demand for possession of the premises on December 31, 1992. IHC relinquished the keys to the property on January 11, 1993, pursuant to Beals' first request for keys. Beals had access to the premises any time after December 31, 1992, and brought a general

contractor, subcontractors and real estate personnel onto the premises between December 31, 1992, and January 18, 1993. Additionally, Beals gave keys to the premises to his general contractor.

IHC had moved its business operations to Geneva, Illinois, some time in October 1992, with a complete start-up during the last week of December 1992. After December 31, 1992, all of IHC's equipment was out of Beals' premises, and only maintenance people were on the premises. On January 18, 1993, IHC left the premises under the belief that it had completed the work required in the settlement agreement. However, Beals was not satisfied with the condition of the premises on January 18, and IHC had to return in March. It supplied two workers who worked full-time for one week to complete work on the premises requested by Beals. The work was done without disruption to the plaintiff's use or possession of the premises.

On January 26, 1993, Beals filed a complaint seeking recovery under the holdover statute and for recovery of attorney fees and costs pursuant to the terms of the settlement agreement. On May 11, 1993, Beals filed a motion for summary judgment. After IHC filed its response in opposition, and Beals filed its reply and the judge heard oral argument, the judge granted Beals' motion for summary judgment on August 19, 1993. He granted Beals' prayer for double rent under the holdover statute but denied the claim for attorney fees. Beals does not appeal the order denying its prayer for attorney fees.

■ The holdover statute (735 ILCS 5/9—202 (West 1992)), the interpretation of which is the heart of this case, provides as follows:

> "Wilfully holding over. If any tenant or any person who is in or comes into possession of any lands, tenements or hereditaments, by, from or under, or by collusion with the tenant, wilfully holds over any lands, tenements or hereditaments, after the expiration of his or her term or terms, and after demand made in writing, for the possession thereof, by his or her landlord, or the person to whom the remainder or reversion of such lands, tenements or hereditaments belongs, the person so holding over, shall, for the time the landlord or rightful owner is so kept out of possession, pay to the person so kept out of possession, or his or her legal representatives, at the rate of double the yearly value of the lands, tenements or hereditaments so detained to be recovered by a civil action."

■ The issues as raised by IHC are twofold: Does the record disclose, as a matter of law, that IHC withheld possession from Beals; and, if so, does the record disclose, as a matter of law, that IHC's holding over was willful within the meaning of the holdover statute? We have found no case in Illinois or in any other jurisdiction factu-

ally precisely in point; but the question of what constitutes a holdover tenancy has been considered in many cases throughout the country and sometimes with inconsistent results. (See *Holdover Tenancy*, 13 A.L.R.5th 169 (1993).) Similarly, the question of whether the holding over was willful under the Illinois statute and similar statues has been considered in many cases throughout the country, again sometimes with inconsistent results. (See *Damages—Tenants Willful Retention*, 7 A.L.R.4th 589 (1981).) One general principle recognized everywhere is that whether a tenant is a holdover and whether the holding over was willful are questions of fact. (See, *e.g.*, *Consumers Distributing Co. v. Hermann* (1991), 107 Nev. 387, 812 P.2d 1274 (whether tenant was a holdover is a question of fact to be decided in light of the surrounding circumstances); *Chapman v. Woolsey* (1955), 4 Ill. App. 2d 261, 124 N.E.2d 366 (whether there was a willful holding over was a question for the jury).) We do not agree with Beals' contention that *Chapman v. Woolsey* does not represent the law in Illinois. The case cited by Beals, *Murphy v. Texaco* (N.D. Ill. 1983), 567 F. Supp. 910, is not at odds with *Chapman v. Woolsey*. In *Murphy*, which involved an action for rent and did not involve the holdover statute, the district court judge granted summary judgment in favor of the landlord in its claim for past-due rent. The facts in *Murphy* are vastly different from the facts in the case before us. Moreover, our view that whether a tenant is a holdover is a question of fact does not mean that the issue may never be decided by summary judgment. We note in passing that in *Murphy* the district judge held that the tenant was not a holdover tenant.

IHC argues that it was not a holdover tenant at all because it did not deprive Beals of possession. We believe there is authority from other jurisdictions supporting IHC's argument. (See, *e.g.*, *First Hartford Realty Corp. v. Connecticut Food Stores, Inc.* (1964), 2 Conn. Ct. 488, 202 A.2d 483; *Wolff v. Manville Forest Products Corp.* (La. 1986), 486 So. 2d 1085.) We concede that there is authority supporting Beals' argument. But we have no doubt that whether IHC was a holdover is, at least, a question of fact. The case cited by Beals, *MXL Industries, Inc. v. Mulder* (1993), 252 Ill. App. 3d 18, 623 N.E.2d 369, does not persuade us to hold otherwise. In that case, the trial judge made a finding of fact that the tenant's vacating the premises but leaving a cooling tower and personal property on the premises constituted proof that the tenant remained in possession. The court did not hold that possession had been established as a matter of law. We also have no doubt that whether IHC was a willful holdover under the statute was, at least, a question of fact.

The statute does not define the term "wilful"; but one of the earliest cases decided under the statute, *Stuart v. Hamilton* (1872), 66 Ill. 253, 255-56, gives us some guidance:

> "The courts have held that when the lease had expired according to its terms, the holding over, although intentional, is not within the statute, unless it was *knowingly and wilfully wrongful*; that where the tenant continued to hold under a reasonable belief that he was doing so rightfully, he does not incur the penalty, and yet the language [of the statute] would embrace such a case as reasonably as if the term had been ended by the landlord by enforcing a forfeiture of the lease." (Emphasis added.)

The supreme court reversed a judgment against the defendant for double rent.

In the principal case cited by IHC, *Stride v. 120 West Madison Building Corp.* (1985), 132 Ill. App. 3d 601, 477 N.E.2d 1318, a landlord sued a tenant for double rent, not under the statute, but under the express terms of a lease which called for a double payment of rent if the lessee "retains possession of the premises or any part thereof after the termination of the term by lapse of time or otherwise." (*Stride*, 132 Ill. App. 3d at 605.) The trial judge denied double rent based on a finding that the tenant did not act in bad faith. Our reading of the appellate court language leads us to the conclusion that the court, tacitly at least, agreed with the trial judge:

> "The controlling fact in analogizing the statute in the *Fasking* case to the present lease is the finding of willfulness. In order to enforce the double rent clause, the trial court imposed the bad-faith requirement. Consistent with its finding that Stride's hold over was not in bad faith, the trial court properly denied double rent ***." *Stride*, 132 Ill. App. 3d at 606.

■ We agree with Beals that *Stride* is factually different from the case before us in that it involved a lease provision and not the statute. But we believe the difference militates in favor of IHC. If it may be said that a double rent covenant in a lease, which makes no mention of willfulness, may not be enforced in the absence of bad faith, *a fortiori,* a statutory requirement of willfulness might properly be construed to require bad faith. But we need not make such a broad pronouncement that bad faith is required for all claims brought under the statute. Although most of the cases which refuse to enforce the double rent statute involved *bona fide* disputes over the right to possession, we refuse to make such a narrow pronouncement that only a *bona fide* dispute over the *right* to possession will excuse a tenant under the statute. We believe the better rule is that where a tenant remains in possession for colorably justifiable reasons, he should not be charged under the statute. In other words, following *Stuart v. Hamilton*, the tenant, to be liable under the statute, must know that

his retention of possession is "wrongful." (*Stuart v. Hamilton*, 66 Ill. at 255.) With that understanding we turn to the agreement.

Under the agreement, IHC agreed to leave certain equipment on the premises "in operating condition"; and to remove certain equipment, including a boiler and cooling tower connections and piping, dust collectors and a tank ventilator system, including air duct piping, electrical wiring connections and all other personal property. IHC was also required to "remove or cut off flush with [the] surface, all fasteners, brackets, bolts and attachments in floors, walls and ceilings used to secure or serve equipment removed; [to remove] all depressed concrete pits; [to repair] all roof and/or wall openings resulting from removal performed by IHC pursuant to the agreement"; the material used in the repair was to be acceptable to Beals. The agreement further provided that on or before March 1, 1993, IHC was to inspect the premises to determine "compliance" with the agreement; that Beals would provide IHC notice of any claims of Beals "regarding any defaults" by IHC of the settlement terms. IHC would have 30 days after receipt of Beals' default claims to "cure each of the" claims. The agreement also provided that the complaint for temporary restraining order and preliminary injunction filed by Beals would be dismissed. IHC was to complete all the required removal by December 31, 1992.

It is obvious that the parties recognized the possibility that IHC would not complete the removal of equipment by December 31. The agreement also recognized the possibility that IHC would be required to return to the premises after March 1, 1993, to complete work required by Beals and to remain on the premises for 30 days.

In fact, Beals was not satisfied with the condition of the premises on January 18, 1993. IHC had to return in March and supply two workers who worked full-time for one week to complete work on the premises requested by Beals. The work was done without disruption to the plaintiff's use or possession of the premises.

We believe that *Consumers Distributing Co. v. Hermann* (1991), 107 Nev. 387, 812 P.2d 1274, while not precedentially controlling, is instructive and persuasive. In that case, the lease required that the lessee return the premises in the same condition in which they had been received. At the end of the lease, approximately $11,000 worth of repair work was needed. The lessor had agreed to make a list of items it wished to have repaired but did not deliver the list until 23 days before the expiration of the lease. Upon receipt of the list, the lessee began repairs but did not complete them until several months after the lease had expired. The trial court held that the tenant's retention of possession to make repairs was sufficient to constitute a

holdover tenancy, but the Nevada Supreme Court disagreed. The supreme court recognized the general rule that "[c]ourts generally agree that whether the tenant's failure to repair amounts to a holdover is a question of fact to be decided in light of the surrounding circumstances. [Citations.]" (*Consumers*, 107 Nev. at 391, 812 P.2d at 1277.) The landlord agreed that if the tenant had abandoned the premises without completing the repairs it was obligated to make under the terms of the lease, there would be no holdover. The court said that under those circumstances the tenant "should not be penalized for merely completing an obligation." *Consumers*, 107 Nev. at 392, 812 P.2d at 1278.

■ In this case, IHC had already been involved as a defendant in an injunction action brought by Beals. In response to that action, it entered into an agreement, the terms of which we have already discussed, and which, according to the pleadings, IHC made an honest effort to complete. A reasonable inference may be drawn that IHC was confronted with a formidable task in completing what was required in 21 days. It should be kept in mind that, under some authority, IHC's failure to comply with all of the terms of the agreement might itself be considered a retention of possession. Indeed, as noted, Beals has cited one. (*MXL Industries, Inc. v. Mulder* (1993), 252 Ill. App. 3d 18, 623 N.E.2d 369.) IHC had a Hobson's choice in walking away from the premises on December 31 in compliance with Beals' demand for possession or staying on the premises in an attempt to comply with the agreement. An action to recover double rent under the statute is highly penal and the lessor, to recover, must bring his case clearly within the statute. (*Chapman v. Wright* (1858), 20 Ill. 120.) Regardless of what complete definition of "willfulness" is to be given the term under the statute, to us it imports more than what the bare record before us shows. Whether IHC's actions were knowingly wrongful raise at least a question of fact.

For these reasons, we conclude that summary judgment should not have been granted to Beals. The judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

McNAMARA, P.J., and ZWICK, J., concur.