RICHARD J. SZPILA, Plaintiff-Appellant, v. CHRIS BURKE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—94—2199

Opinion filed April 12, 1996.—Rehearing denied May 13, 1996.

Connie R. Fernandez, of Chicago, for appellant.

William H. Gifford, Jr., of Shefsky & Froelich, Ltd., of Chicago, for appellees.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the lessee-plaintiff, Richard J. Szpila, from a judgment in favor of the lessors-defendants and involves the interpretation of the Residential Landlord and Tenant Ordinance of the City of Chicago (Chicago Municipal Code §§ 5—12—010 through 5—12—200 (1992)) (RLTO). The case was decided on summary judgment. The following facts are undisputed except where noted.

On May 1, 1989, the plaintiff entered into a written lease with the defendants for an apartment at 3729 N. Magnolia in Chicago. Chris Burke signed the lease on behalf of the HTB Partnership; the other members of the partnership were his wife, Marguerite, and Charles Hodges. There were three dwelling units in the apartment building, and the owners did not live in the building while the plaintiff lived there.

The term of the lease was from May 1, 1989, to May 1, 1990, and the amount of rent was $975 per month. The security deposit the plaintiff paid was also $975. After the expiration of the lease term, the parties orally agreed to renew the lease. The plaintiff claims that they agreed to a month-to-month lease, but the defendants claim it was a year-to-year lease. The rent increased after the first year the plaintiff lived in the building, but the security deposit did not increase. The defendants deposited rent money they collected into the same account in which they held the plaintiff's security deposit.

The plaintiff provided the defendants with 30 days' advance notice that he intended to vacate the apartment on September 30, 1993. The defendants agreed to this, and the plaintiff vacated the apartment on September 30, 1993. Although the plaintiff alleged that he left the premises in good condition, normal wear and tear excepted, the defendants claimed that the plaintiff had admitted breaking a key off in the lock of an outdoor gate and had requested that the defendants deduct the cost of the lock repair from his security deposit.

By October 11, 1993, the defendants refunded the plaintiff $926 of his security deposit. They had deducted $49 from the deposit for the repair of the lock. They did not send the plaintiff a receipt for this repair. At no time during the plaintiff's tenancy or before February 1994 did the defendants pay the plaintiff interest on his security deposit. Before filing his complaint, the plaintiff did not ask the defendants for interest on his security deposit or for the $49 they deducted from his security deposit.

■ On December 6, 1993, the plaintiff filed a complaint against "Chris Burke a/k/a HTB Partnership" and later added the other defendants. In the first count of his seven-count complaint, the plaintiff alleged that the defendants violated section 5—12—080(d) of the RLTO by deducting $49 from the $975 security deposit for the lock repair and by failing to send him the receipt for this repair. Section 5—12—080(d) provides that the landlord shall return the tenant's security deposit within 45 days after the tenant vacates the dwelling unit but that the landlord may deduct from the security deposit a reasonable amount necessary to repair any damage. The landlord is required to deliver or mail to the last known address of the tenant an itemized statement of the damages allegedly caused and to attach copies or paid receipts for the repair or replacement.

Counts II through V contained allegations that by failing to pay yearly interest on his security deposit the defendants violated section 5—12—080(c) of the RLTO, which requires a landlord to pay his tenant 5% interest on a security deposit within 30 days after the end of

each 12-month rental. Each count II through V corresponded to one of the years, 1990 to 1993, for which the plaintiff alleged that the defendants did not pay him interest on his security deposit.

In count VI the plaintiff alleged that the defendants violated section 5—12—080(a) by keeping his security deposit in the same account with their rent funds. Section 5—12—080(a) provides that a landlord shall hold all security deposits in a federally insured interest-bearing account in a financial institution, and the security deposits shall not be commingled with the assets of the landlord.

In count VII the plaintiff alleged that the defendants did not provide him with a summary of the RLTO as required under section 5—12—170, which provides that a copy of the summary shall be attached to each written rental agreement when the agreement is initially offered to any tenant or prospective tenant.

For each of the counts of the complaint, the plaintiff requested court costs and attorney fees under section 5—12—180 of the RLTO. In addition to court costs and attorney fees the plaintiff requested the following relief: For each of the counts I to VI, the plaintiff requested two times the security deposit ($1,950) as a penalty under section 5—12—080(f) of the RLTO. For count I, the plaintiff also requested a return of the $49 the defendants had deducted from his security deposit. For each of the counts II to V, the plaintiff also requested $48.75 as yearly interest at 5% on his security deposit. For count VII, the plaintiff requested $100 as a penalty under section 5—12—170.

The defendants filed an answer in which they asserted the affirmative defense of *laches*. The defendants admitted that they had failed to send the plaintiff a receipt for the repair when they returned his security deposit, admitted that they did not pay him interest on his security deposit, admitted depositing rent and the plaintiff's security deposit in the same account and admitted not providing the plaintiff with a summary of the RLTO. They added that, on December 30, 1993, they had offered to settle the case for $3,000, which amount would have compensated the plaintiff for the amount they had deducted from his security deposit for the cost of the gate repair, the interest they owed on the security deposit, court costs, attorney fees and an amount equal to two times the security deposit, which they admitted they owed the plaintiff for violating section 5—12—080 of the RLTO.

On February 15, 1994, the plaintiff filed a motion for partial summary judgment on counts II through VII of his complaint. The defendants filed a response to this motion, to which they attached an affidavit by Chris Burke. In this affidavit, Chris Burke asserted that,

on February 16, 1994, he issued a $219.38 check to the plaintiff for the interest on the security deposit. It appears that the plaintiff accepted this check because, in his reply to the defendants' response to his motion for summary judgment, he argued that "[p]ayment of this amount was understood by all parties [not to] prejudice anyone's rights in the litigation."

The defendants' response also alleged that the defendants were unaware of the provisions of the RLTO that required payment of interest, maintenance of the security deposit in an interest-bearing account separate from the assets of the defendant and the provision requiring that the plaintiff be given a summary of the RLTO. The defendants also alleged that the plaintiff had never made any request for the interest or the summary.

■ On April 13, 1994, Judge George Timberlake granted the plaintiff's motion for partial summary judgment, but he held that the plaintiff could recover only one penalty under section 5—12—080(f), which provides as follows and upon which the plaintiff's case hinges:

"If the landlord or landlord's agent fails to comply with any provision of Section 5—12—080(a)—(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at five percent. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code § 5—12—080(f) (1992).

The judge said that the language of this section does not require separate penalties for separate violations of section 5—12—080. He stated that his order was not final because count I of the complaint was still pending. In addition, he reserved ruling on the plaintiff's request for court costs and attorney fees for counts II through VII.

On the date set for trial on count I, Judge Patrick McLaughlin entered judgment in favor of the plaintiff without holding a trial. He decided that a trial was unnecessary because the defendants had admitted that they had not sent the plaintiff a receipt for the gate repair as section 5—12—080(d) requires. The judge awarded the plaintiff court costs and $125 in attorney fees on this count, but he denied the plaintiff's request for a $1,950 penalty because, he said, the defendants' violation was *de minimis.*

For each of counts II through V (failure to pay interest on the security deposit), the judge awarded the plaintiff $48.75 (for a year of 5% interest on the security deposit), court costs and attorney fees of $125. For count II, he also awarded the plaintiff an amount equal to two times the security deposit ($1,950), but he refused to impose this penalty for the defendants' other violations of section 5—12—080

because, like Judge Timberlake, he decided that the plaintiff was not entitled to separate penalties for separate violations of section 5—12—080.

For count VI (commingling the security deposit with rent), the judge awarded the plaintiff only court costs and attorney fees of $125. He again refused to award the double security deposit penalty because, he said, separate penalties were not warranted under section 5—12—080(f). For count VII (failure to provide the plaintiff with a summary of the ordinance), the judge awarded the plaintiff $125 attorney fees, court costs and the section's $100 penalty.

We review the judge's determination that separate penalties are not available for separate violations of section 5—12—080 under a *de novo* standard. *Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994). The plaintiff contends that the word "any" in section 5—12—080(f) requires that a landlord pay the double security deposit penalty for each separate violation of section 5—12—080. According to the plaintiff, the provisions of section 5—12—080(f) are mandatory, and the defendants must pay the penalty for each of their admitted six violations of section 5—12—080. That is, they must pay a separate penalty for each of the four years in which they violated section 5—12—080(c) by not paying annual interest on the security deposit. In addition, they must pay a separate penalty for their violation of section 5—12—080(a) (commingling) and still another penalty for violating section 5—12—080(d) (failing to send the plaintiff a receipt for the lock repair). In sum, the plaintiff maintains that he is entitled to $12,044 for the defendants' failure to pay him a total of $195 in interest over a four-year period, for failure to provide him with a copy of the summary of the ordinance, for failure to send him a receipt for the repair of the lock and for failure to keep the security deposit in a separate account.

■ The resolution of this case depends upon an interpretation of section 5—12—080(f). The same rules used in construing statutes also apply to the construction of municipal ordinances. *In re Application of County Collector*, 132 Ill. 2d 64, 547 N.E.2d 107 (1989). The fundamental rule in construing statutes is to give effect to the intent of the legislature, or, in this case, the city council. See *State v. Mikusch*, 138 Ill. 2d 242, 562 N.E.2d 168 (1990). The best evidence of this intent is the language of the statute. *People v. Jameson*, 162 Ill. 2d 282, 642 N.E.2d 1207 (1994).

If the language of the statute is clear and unambiguous, a court may not resort to extrinsic aids of construction. *In re Marriage of Logston*, 103 Ill. 2d 266, 469 N.E.2d 167 (1984). A statute is ambiguous if "it is capable of being understood by reasonably well-informed

persons in two or more different senses." *Jameson*, 162 Ill. 2d at 288. The ordinance does not say that a *separate* penalty *must* be imposed for *each* violation of the ordinance. We judge that extrinsic aids to construction are necessary to interpret section 5—12—080(f) because it is ambiguous. The ordinance is capable of being understood in either of the senses the parties advance.

■ When a statute is ambiguous, courts will use rules of construction to help interpret the statute. One of these rules is that "[p]enal statutes will be construed strictly, and not extended beyond their terms [citation], and ambiguities will be resolved in favor of lenity." *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455, 566 N.E.2d 248 (1990). Contrary to the plaintiff's argument, the RLTO is a penal ordinance. See *Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc.*, 11 Ill. App. 2d 132, 136 N.E.2d 610 (1956) (statute which imposes a forfeiture or penalty for violating its provision is a penal statute); see also *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.*, 271 Ill. App. 3d 257, 263, 648 N.E.2d 249 (1995) (statute imposing double rent penalty on tenant holding over after expiration of lease is "highly penal").

Another rule of construction requires courts to give statutes a reasonable interpretation that will not produce absurd results or hardship. *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 588 N.E.2d 1111 (1992). Invoking those rules of construction, we conclude that the legislative body of the City of Chicago could never have intended the result urged upon us by the plaintiff.

■ The defendants have alleged that they were unaware of the provisions of the RLTO and point out that the plaintiff never made any request for the interest. The plaintiff answers that the defendants are charged with knowledge of the ordinance and that the ordinance makes no mention of the requirement for a demand by the plaintiff for the payment of the interest or the demand for a receipt or a summary of the ordinance. The plaintiff's argument that the defendants are charged with knowledge of the ordinance is double-edged. For if the law presumes knowledge of the ordinance on the part of the defendants, so also the law presumes knowledge on the part of the plaintiff. According to the plaintiff's argument, therefore, with full knowledge of the ordinance, he was to be permitted to sit quietly by year after year without so much as a whisper to the defendants, secure in his knowledge that each succeeding year put another $1,950 in his pocket, and instead of payment of $195 in interest, he *must* receive $12,044. We refuse to countenance any interpretation of the ordinance that would permit such an unjust result.

We believe analogous authority exists in those cases interpreting

the tenant hold-over statute, in which the courts have refused to permit double rent payments from hold-over tenants unless the holding over is willful, that is, without any legal justification. See, *e.g.*, *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.*, 271 Ill. App. 3d 257, 648 N.E.2d 249 (1995). In that case the court held that, in order for a tenant to be liable under the statute, the tenant must know that his retention of possession was "wrongful." 271 Ill. App. 3d at 262, citing *Stuart v. Hamilton*, 66 Ill. 253, 255 (1872).

We hasten to concede that the hold-over statute discussed in *Beals* (735 ILCS 5/9—202 (West 1992)) expressly provides that the double rent penalty shall be imposed only if the tenant willfully holds over. The ordinance before us does not contain such a requirement. But we note that in *Stride v. 120 West Madison Building Corp.*, 132 Ill. App. 3d 601, 477 N.E.2d 1318 (1985), a landlord sued a tenant for double rent under the express terms of a lease which called for double payment if the lessee retained possession of the premises. There was nothing in the lease speaking of "willfulness." The appellate court in *Stride* used the hold-over statute in holding that willful holding over under the lease would be required even in the absence of any such language in the lease itself.

A cardinal rule of statutory construction is to effectuate the intent of the legislature. *Carey v. Elrod*, 49 Ill. 2d 464, 275 N.E.2d 367 (1971). When necessary to achieve that goal, a court may alter, supply or modify words and correct obvious mistakes. *People v. Garrison*, 82 Ill. 2d 444, 412 N.E.2d 483 (1980). In *Orbach v. Axelrod*, 100 Ill. App. 3d 973, 980, 427 N.E.2d 399 (1981), the court spoke as follows:

> "[W]ords may be added, deleted or changed in a statute to effectuate legislative intent. [Citation.] This recognizes the rule that the intention of the legislature is to be gathered not only from the language used but also from the reasons for the enactment and the purposes to be attained. [Citations.] Indeed, as the court noted in *Smith v. County of Logan* (1918), 284 Ill. 163, 165-66, 119 N.E.2d 932:
>
>> 'In construing a statute, the court will not be confined to its literal meaning. A thing within the intention is regarded within the statute although not within the letter.' "

We judge, therefore, that to avoid the absurd and unjust result urged upon us by the plaintiff, the city council intended that violations under the ordinance, in order to be subject to the penalty provisions, must have been willful. At the very least, the plaintiff should have made some request for the summary, the receipt and the interest payments. We also reject the plaintiff's argument the word "shall" in a statute or ordinance is *always* mandatory. See *Village of Park*

*Forest v. Fagan*, 64 Ill. 2d 264, 356 N.E.2d 59 (1976); *In re Armour*, 59 Ill. 2d 102, 319 N.E.2d 496 (1974).

For these reasons, the trial judge's holding that the plaintiff was not entitled to separate penalties is affirmed. We note parenthetically, although the defendants do not cross-appeal, that under our holding the plaintiff should not have received a payment of a sum double the amount of the security deposit under any count.

We now turn to the plaintiff's assertion that the judge erred in reducing his attorney fees from the amount he requested. The judge's written order provided:

> "The court finds that the Plaintiff's attorney spent 15 hours on this matter, which amount was reasonable, and that her billing rate of $125 per hour is reasonable and that he would have awarded attorney's fees as requested in the amount of $1,875 but the court reduced same to $875 total in light of the fact that Defendant did not seriously contest liability, except for the cumulative penalties."

The plaintiff argues that the judge erred in reducing his attorney fees because the judge did so without any rational basis.

■ We think that the judge's award of attorney fees was proper. An attorney requesting that a judge award fees has the burden of proof of establishing the value of the legal services. *In re Estate of Callahan*, 144 Ill. 2d 32, 578 N.E.2d 985 (1991). In determining the reasonable value of an attorney's services, courts have used two approaches. In one, the judge determines an amount based on factors such as

> "the time and labor required, the novelty and difficulty of the issues, the skill required, the preclusion of other employment necessary to accept the case, the customary fee charged in the community, the amount of money involved in the case, the results obtained and the attorney's reputation, experience and ability."

*McHugh v. Olsen*, 189 Ill. App. 3d 508, 514, 545 N.E.2d 379 (1989). In the other approach, the judge multiplies the number of hours the attorney has spent on the case and the attorney's hourly billing rate and then adjusts the amount to reflect any special circumstances in the case. *In re Estate of Healy*, 137 Ill. App. 3d 406, 484 N.E.2d 890 (1985). A reviewing court will not overturn a judge's award of attorney fees absent a clear abuse of discretion. *Tobias v. King*, 84 Ill. App. 3d 998, 406 N.E.2d 101 (1980).

■ Under either of these approaches, we do not believe the judge erred in reducing the plaintiff's attorney fees. The plaintiff states in his brief that the judge entertained an oral fee petition in court and acknowledged that he was familiar with the relevant factors for

determining reasonable attorney fees. This information and the judge's order contradict the plaintiff's claim that the judge reduced his attorney fees without any rational basis. The judge's acknowledgement of the relevant factors indicates that he considered these factors in reaching his award. His statement in the order that he was reducing the fees because the defendants did not contest their liability under the RLTO also indicates that his award was based on the relevant factors, which include the difficulty of the case and the skill required.

Although the judge stated in the order that the 15 hours the plaintiff's attorney spent on the case and her hourly rate were reasonable, this did not preclude him from reducing the amount determined by multiplying these two numbers. As the court stated in *Healy*, a decision on the reasonableness of attorney fees should not be based merely on a multiplication of the attorney's hourly rate and the time she spent on the case because a court should award fees only for work reasonably required for the proper performance of the services. *Healy*, 137 Ill. App. 3d at 410; see also *Johns v. Klecan*, 198 Ill. App. 3d 1013, 556 N.E.2d 689 (1990) (the time and labor an attorney spends on a case is only one factor a court should consider in awarding fees); *Laff v. Chapman Performance Products, Inc.*, 63 Ill. App. 3d 297, 379 N.E.2d 773 (1978) (time spent on a case is only one of the factors relevant to determining the reasonableness of attorney fees).

In the context of the order as a whole (see *City of Chicago v. American National Bank & Trust Co.*, 171 Ill. App. 3d 680, 525 N.E.2d 915 (1988)), we think that the judge's findings that the hours the plaintiff's attorney spent on the case and her hourly rate were reasonable was a finding that, in general, that number of hours and that rate would be reasonable for this type of case. Considering the specific facts of the case, however, that is, that the defendants did not contest liability, only a lesser amount than the product of the hourly rate and hours spent was reasonable.

We cannot say that the judge's determination that $875 was a reasonable fee was an abuse of discretion, especially since there is no evidence in the record, other than the judge's order, to indicate the value of his attorney's services. It is the plaintiff's burden as the party asserting error to provide us with a record to support the claim that the value of his attorney's services was greater than the value the judge determined. See *In re Estate of Friedman*, 123 Ill. App. 3d 82, 462 N.E.2d 692 (1984). He has not met this burden.

There is no transcript of the proceedings before the judge in the record, nor is there a bystander's report under Illinois Supreme Court

Rule 323 (155 Ill. 2d R. 323). (The record contains a motion by the plaintiff to certify a bystander's report and a response by the defendants opposing this motion, but the record contains no indication of the judge's decision on this motion.) Also absent from the record is any fee petition or other evidence of the hours the plaintiff's attorney spent on this matter.

In affirming the judge's award of fees, we also note that the benefit to the plaintiff from his attorney's services was not great. The amount the judge awarded the plaintiff, and the amount the plaintiff will recover after this appeal and years of litigation, is only a few thousand dollars. The amount he will recover is also almost equal to the amount the defendants offered him after he filed his initial complaint. See *In re Marriage of Malec*, 205 Ill. App. 3d 273, 562 N.E.2d 1010 (1990) (in order to avoid an irrational fee, there must be a correlation between fee and the results obtained in a case). Although this settlement offer may not have been relevant to the defendants' liability, we consider it relevant to the benefit the plaintiff obtained from his attorney's services. See *Susan E. Loggans & Associates v. Estate of Magid*, 226 Ill. App. 3d 147, 589 N.E.2d 603 (1992) (in determining the benefit of a firm's work for an estate, the trial judge erred in refusing to consider evidence of a settlement offer from a group of defendants).

■ For these reasons, we affirm the judge's award of attorney fees. The plaintiff also argues that this court should award him attorney fees for his attorney's work on this appeal because section 5—12—180 provides that a "prevailing plaintiff" may recover reasonable attorney fees for an action arising out of a violation of the RLTO. We need not decide whether attorney fees on appeal are available under section 5—12—180 because, even if such fees were available, the plaintiff would not be entitled to them. We have decided to affirm the judgment the plaintiff challenges, and, therefore, the plaintiff cannot be considered a "prevailing plaintiff" with respect to this appeal. See *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 607 N.E.2d 1337 (1992) (defining "prevailing party"). We, therefore, refuse to award attorney fees for his attorney's work on this appeal as the plaintiff requests.

The defendants have provided us with scant assistance in deciding this case. Their entire brief is based on an unpublished order under Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994) R. 23, eff. July 1, 1994), even though the defendants concede it has no precedential value. Moreover, that case did not involve the amendment to the ordinance that is before us.

We have *sua sponte* invoked the rules of construction and the

power of a court to add language to a statute in order to effectuate what we deem to be the legislative intent. In doing so, we are following the teaching of the supreme court in *Wozniak v. Segal*, 56 Ill. 2d 457, 460, 308 N.E.2d 611 (1974), in which the court noted that trial judges, and, implicitly, appellate judges, are more than umpires and are responsible for the justice of the judgments that are entered. The court quoted from *Hux v. Raben*, 38 Ill. 2d 223, 225, 230 N.E.2d 831 (1967), in which a trial judge granted specific performance and the appellate court reversed. The appellants in the supreme court argued that the appellate court improperly decided the case on a ground that had not been raised by the parties. In affirming the appellate court, the supreme court said "that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." 38 Ill. 2d at 225.

■ Because the case before us involves the interpretation of an ordinance, which is of very wide application and has not been interpreted before, we deem it appropriate to override any considerations of waiver if in fact they exist.

Judgment affirmed.

ZWICK, P.J., and RAKOWSKI, J., concur.