MIDSTATE SIDING AND WINDOW COMPANY, INC., Plaintiff-Appellant v. KENNETH ROGERS *et al.*, Defendants-Appellees.

Third District   No. 3—98—0830

Opinion filed September 10, 1999.—Modified on denial of rehearing February 1, 2000.

HOLDRIDGE, P.J., dissenting.

Chester C. Fuller (argued), of Peoria, for appellant.

John R. Rehn (argued), of Barash & Stoerzbach, of Galesburg, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

In this case we are essentially presented with one question: Is the plaintiff, Midstate Siding and Window Co., Inc. (Midstate), subject to the Credit Services Organizations Act (Credit Services Act or Act) (815 ILCS 605/1 *et seq.* (West 1998))? The trial court held that Midstate was governed by the Act and violated it through its dealings with the defendants, Kenneth and Ella Rogers. Pursuant to the following discussion, we affirm. In so doing, we hold that the plain language of the Act supports coverage for retailers who, in exchange for valuable consideration, aid consumers in obtaining extensions of credit as defined by the Act. In addition, we hold that appellate attorney fees are recoverable under the Act.

BACKGROUND

Midstate contracted with the Rogerses to provide aluminum siding for the Rogerses' home. A written contract evidences the terms of the siding contract. However, in both its briefs and its oral arguments to this court, Midstate admitted that, as part of the agreement, it agreed to help the Rogerses obtain financing. To that end, the Rogerses filled out a customer financing application that Midstate forwarded to several lending institutions. Bank One of Peoria eventually accepted the Rogerses' application.

After finance approval, the Rogerses refused to accept performance of the contract, so Midstate brought suit to enforce the contract. The Rogerses counterclaimed, arguing that Midstate was subject to the Act and that the contract was void under the Act because it did not contain several of the requirements enumerated in sections 6 and 7 thereof, such as the terms and conditions of payment. 815 ILCS 605/6, 7 (West 1998).

The trial court heard the cause at a bench trial without a court reporter. Subsequently, through an opinion letter the court held that Midstate's conduct fell under the Act and that Midstate violated the Act with respect to the Rogerses' contract. In addition, the court awarded the Rogerses $6,157.50 in attorney fees.

On appeal, Midstate confines its argument to the applicability of the Act, contending that retail businesses such as Midstate should not be governed by the Act. The Rogerses argue that they should be awarded attorney fees for this appeal.

## DISCUSSION

The Credit Services Organizations Act has been in effect for over nine years. Nevertheless, this case presents an issue of first impression, having never been placed before an appellate court in this state.

■ The judicial role in construing a statute is to ascertain legislative intent and give it effect; to aid in accomplishing this task, the court should attempt to determine the objective the legislature sought to accomplish and the evils it desired to remedy. *People v. Scharlau*, 141 Ill. 2d 180, 565 N.E.2d 1319 (1990). The most reliable indicator of intent is the statute's language, which should be given its plain and ordinary meaning. *In re Estate of Rennick*, 181 Ill. 2d 395, 692 N.E.2d 1150 (1998). When a statute defines its own terms, however, those terms must be construed according to the definitions contained therein. *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 666 N.E.2d 1198 (1996). If statutory language is clear and unambiguous, a court must enforce it as written and may not resort to other aids for construction. *Superior Structures Co. v. City of Sesser*, 292 Ill. App. 3d 848, 686 N.E.2d 710 (1997).

When construing a statute, we must presume that the legislature did not intend unjust, absurd or unreasonable consequences. *Thomas P. Valenti, P.C. v. Swanson*, 294 Ill. App. 3d 492, 690 N.E.2d 1031 (1998). The construction of a statute is a question of law which we review *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 659 N.E.2d 961 (1995).

■ According to the Act, its purpose is to provide prospective consumers of credit services companies with the information neces-

sary to make informed decisions and to protect the public from unfair or deceptive business practices. 815 ILCS 605/2 (West 1998). In order to be covered by the Act, a party must represent:

> "with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, *** that the [party] can or will ***
>> (i) improv[e] a buyer's credit record, history, or rating:
>> (ii) obtain[ ] an extension of credit for a buyer; or
>> (iii) provid[e] advice or assistance to a buyer with regard to either subsection (i) or (ii)." 815 ILCS 605/3(d) (West 1998).

Under the Act, an "extension of credit" is the right "to defer payment of a debt or to incur a debt and defer its payment offered or granted primarily for personal, family, or household purposes." 815 ILCS 605/3(c) (West 1998).

■ The Rogerses contend that, by agreeing to help them obtain financing, Midstate satisfied the Act's definition of a "credit services organization." We agree. The above-quoted statutory language is clear and unambiguous and plainly supports coverage in this case. Midstate has met the definition contained in subsection (d)(iii) by providing assistance to the Rogerses with regard to obtaining an extension of credit as part of an agreement to side their home. The agreement was supported by consideration in that the financing assistance, although not a term of the written contract, was a part of the entire agreement as admitted by Midstate. Consequently, we find that the trial court correctly held Midstate liable under the Act.

In opposition to this holding, Midstate mainly makes the policy argument that, if the Act is interpreted to include Midstate, then all retailers that assist customers in obtaining credit would be subject to the Act. In effect, Midstate contends that such an outcome is absurd. We disagree. Subjecting all retailers to the rigors of the Act who, as a part of their sales agreements, help their patrons obtain financing furthers the policy considerations of the Act to help credit customers make informed decisions and protect them from unfair and deceptive practices. Furthermore, Midstate has not offered one colorable argument for distinguishing retailers from other organizations under the Act.

To the contrary, we note that the case at bar presents a factual situation that compels application of the Act. Through their dealings with Midstate, the Rogerses were placed in the precarious position of having signed a contract without knowing the interest rate that would eventually be charged. Midstate might have secured an outrageous rate to which the Rogerses, for all intents and purposes, would have been bound. Such a situation is directly at odds with the Act and is

likely to be one of the very evils that the legislature attempted to remedy through the Act.

Midstate attempts to salvage its argument by contending that no retailers have registered under the Act pursuant to the Act's registration requirement. See 815 ILCS 605/9 (West 1998). However, when the language of a statute is clear, we must enforce it as written and may not resort to extrinsic aids of construction. *Szpila v. Burke*, 279 Ill. App. 3d 964, 665 N.E.2d 357 (1996). Moreover, if the legislature intended to confine the Act to those companies that solely provide credit services and not to include retailers within the Act's purview, we believe that the Act would have so stated. Section 3 of the Act includes a list of organizations and people who are not covered, such as nonprofit organizations, real estate brokers and attorneys. 815 ILCS 605/3 (West 1996). There is no mention made of retailers in the list of specific exceptions, and we may not add retailers to that list. See *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill. App. 3d 1065, 645 N.E.2d 453 (1994) (when the legislature is silent, a court may not fill the void through judicial interpretation). Consequently, we are compelled to effectuate the plain language of the Act, which covers Midstate's conduct in this case. We therefore affirm the trial court's finding that Midstate was subject to the Act.

■ The Rogerses request attorney fees for this appeal. They argue that, because appellate attorney fees have been awarded under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1996)), such fees should also be recoverable under the Act. We agree.

In *Warren v. LeMay*, 142 Ill. App. 3d 550, 491 N.E.2d 464 (1986), the court reasoned that, given the Consumer Fraud Act's broad remedial purpose, the intent of the damages provision was to compensate a prevailing party for all fees and costs reasonably incurred in connection with his claim. *Warren*, 142 Ill. App. 3d at 583, 491 N.E.2d at 485. In particular, the court found that, when a claim must be litigated at trial as well as on appeal, attorney fees associated with the appeal must be deemed an integral part of that claim. *Warren*, 142 Ill. App. 3d at 583, 491 N.E.2d at 485. The court therefore awarded the consumer appellate attorney fees.

Likewise, the Credit Services Act espouses the same type of broad remedial purpose and contains a damages provision which specifically enumerates attorney fees as recoverable. See 815 ILCS 605/11 (West 1998). The Credit Services Act also contains the same "liberal construction" provision as the Consumer Fraud Act. See 815 ILCS 605/16 (West 1998). Moreover, under section 15 of the Credit Services Act, a violation of it also constitutes a violation of the Consumer

Fraud Act. 815 ILCS 605/15 (West 1998). Hence, the Credit Services Act remedies are in addition to remedies provided by the Consumer Fraud Act and, as discussed above, appellate attorney fees are already recoverable under the Consumer Fraud Act. Consequently, we hold that appellate attorney fees are recoverable under the Credit Services Act and remand to the trial court for a reasonable determination of such fees.

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed and the cause is remanded with directions.

Affirmed and remanded with directions.

HOMER, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

Upon reconsideration, I am convinced that it was not the intent of the legislature to include retail establishments under the purview of the Credit Services Organizations Act (the Act) (815 ILCS 605/1 *et seq.* (West 1998)). I would reverse the trial court and I now, therefore, respectfully dissent.

Section 2(a) of the Act, wherein the legislature declares the general purpose of the Act, states that the purpose of the Act is to protect consumers from "[c]ertain advertising and business practices of some companies *engaged in the business of credit services* [which create] a financial hardship upon the people of this State." (Emphasis added.) 815 ILCS 605/2(a) (West 1996). Section 2(a) also provides that "consumers who have experienced credit problems may *seek assistance* from credit service businesses which *offer to improve the credit standing of such consumers.*" (Emphasis added.) (815 ILCS 605/2(a) (West 1998). Based upon these statements of legislative purpose I would find that the intent of the Act was to regulate businesses that advertise to consumers as providing credit services and those that are engaged primarily in the business of credit services, not businesses offering such services only as an adjunct to retail sales.

Unlike the majority, I cannot find that the Act should apply to retailers based upon policy considerations, a function best left to the legislature or our supreme court.