[Civ. No. 24798. First Dist., Div. Two. Nov. 10, 1969.]

CHINESE HOSPITAL FOUNDATION FUND, Plaintiff and Respondent, v. NORWOOD J. PATTERSON et al., Defendants and Appellants.

## COUNSEL

Field, DeGoff & Rieman and Sidney F. DeGoff for Defendants and Appellants.
McFarland & Ferdon and Harry L. Kuchins, Jr., for Plaintiff and Respondent.

## OPINION

**SHOEMAKER, P. J.**—Defendants Patterson and Golden Gate Broadcasting Co. appeal from a judgment rendered against them in an action framed in unlawful detainer but decided on the basis that the action was one in ejectment.

Upon a record which fully supports its action, the court found that the allegations of plaintiff's complaint were true as to the execution of the lease, the taking of possession by defendants Patterson and their subsequent failure to pay the amounts alleged to be due as rent and real property taxes; that on December 18, 1964, plaintiff had mailed to the Pattersons, both at their residence and the leased premises, a notice to pay rent or quit and had also delivered a copy of said notice to one Joseph Wood, an accountant, at the leased premises; that the written lease between the parties provided that in the event of a default in the payment of rent, plaintiff could re-enter and repossess the leased premises without terminating the lease and could collect the rents and relet the premises for the account of defendants Patterson; that by a written assignment plaintiff was entitled, at all times subsequent to April 29, 1964, to collect the rent from one Gonzales, a subtenant of defendants Patterson, and apply such rent against the Pattersons' rent; that plaintiff did in fact collect Gonzales' rent and apply it to the Pattersons' rent; that plaintiff did not terminate the lease; that plaintiff did not deny the Pattersons the quiet use and possession of the leased premises; that the Pattersons owed rent in the total amount of $74,374.86 for the period from September 10, 1964, through May 10, 1966; that the Pattersons also owed plaintiff $20,584.14 on account of real property taxes plaintiff had paid on the Pattersons' behalf during the period between December 10, 1964, and April 10, 1966; that the Pattersons were entitled to a credit

of $12,355.22, which sum equaled the net rentals which plaintiff had collected from subtenants of the Pattersons after paying the expenses of reletting and other related expenses; that plaintiff had incurred reasonable attorney's fees in the amount of $2,500.

The court concluded as a matter of law that plaintiff was entitled to a judgment against defendants Patterson which (1) awarded plaintiff possession of the leased premises for so long as said defendants remained in default under the written lease; (2) declared that the lease was not terminated but remained in full force and effect; (3) awarded plaintiff a total judgment for unpaid rents and real property taxes in the amount of $82,602.78; (4) awarded plaintiff attorney's fees of $2,500; and (5) awarded plaintiff interest from the date of judgment on all sums due it.

Judgment was accordingly entered, and defendants Patterson and Golden Gate Broadcasting Co. filed notice of appeal therefrom.[1]

The Pattersons agree in their briefs on appeal that the trial court treated the instant proceeding as an ejectment action rather than an unlawful detainer proceeding. However, the parties hold entirely divergent views as to the significance of this fact insofar as it bears upon the propriety of the relief accorded plaintiff by the trial court.

Defendants' position, as we decipher it, is that the bringing of an action in ejectment constitutes a final election by the lessor to terminate the lease and precludes him from thereafter seeking to recover rents due after the date upon which he served his tenant with the declaration in ejectment. Defendants assert that the instant action must be treated as one in ejectment rather than unlawful detainer because plaintiff failed to prove that service of the notice to quit or pay accrued rents was made in the manner required under sections 1161 and 1162 of the Code of Civil Procedure. Defendants assert, more specifically, that plaintiff was required under section 1161 to serve certain subtenants who were in actual occupation of portions of the leased premises at the time. Defendants also assert that plaintiff failed to comply with paragraph 2 of Code of Civil Procedure, section 1162, which provides that if the tenant be absent from his residence and usual place of business, service must be made by leaving a copy of the notice to quit or pay up with some person of suitable age and discretion at either place *and* sending a copy through the mail to the tenant at his residence. Neither contention is meritorious.

■ With regard to the alleged requirement that plaintff serve defend-

---

[1]Assuming arguendo that Golden Gate Broadcasting Co., which was not named in the judgment, had some appealable interest therein, it appears to have abandoned its appeal, since appellants' briefs were filed only on behalf of defendants Patterson.

ants' subtenants, as well as defendants themselves, with the notice to quit or pay rent, *Markham* v. *Fralick* (1934) 2 Cal.2d 221, 223 [39 P.2d 804], and the authorities cited therein, clearly establish that where the leased premises are occupied by both the tenant and certain subtenants, Code of Civil Procedure, section 1161, does not require the lessor to serve the subtenants as well as the tenant in order to maintain an action in unlawful detainer against the tenant.

■ Defendants' contention that plaintiff failed to comply with Code of Civil Procedure, section 1162, is based upon the assertion that plaintiff did not mail a copy of the notice to quit or pay rent to defendants at their residence. There is no merit to this argument. Plaintiff introduced into evidence as its exhibit 3 a copy of the notice, dated December 18, 1964. Attached thereto were two receipts for certified mail addressed to both the Pattersons at their residence. Defendants' counsel stipulated that on December 20, 1964, Mr. Patterson was notified by the post office that there was a certified letter for him. In addition, plaintiff's process server, Ray Lucas, testified that on December 18, 1964, he went to defendant Norwood Patterson's office in the leased premises at 1111 Market Street and left a copy of the notice to quit or pay rent with one Joseph Wood, an accountant who was present in the office.

The above evidence clearly establishes that service of the notice to quit or pay rent was properly effected. Defendants Patterson did not vacate the leased premises within three days of the notice, since Norwood Patterson himself testified that he did not vacate the premises until January 8 or 9, 1965.

■ Although the above discussion obviously disposes of defendants' contention that plaintiff failed to prove his right to recover on an unlawful detainer theory, the point is moot, since both sides agree that the trial court did in fact grant plaintiff relief in ejectment. The court was entitled to do so. (*Hayden* v. *Collins* (1905) 1 Cal.App. 259, 261-262 [81 P. 1120]; *Samuels* v. *Singer* (1934) 1 Cal.App.2d 545, 548-551 [36 P.2d 1098, 37 P.2d 1050].) In the *Hayden* case, the court expressly held that where the averments of the complaint were sufficient to state a cause of action in ejectment and the prayer was for relief which could be granted in such an action, it was of no significance that the facts pleaded might also show a cause of action in unlawful detainer or even to quiet title (pp. 261-262).

■ Turning next to defendants' contention that the bringing of an ejectment action constitutes a binding election by the lessor to terminate the lease, defendants rely solely upon certain dicta in *Coburn* v. *Goodall* (1887) 72 Cal. 498, 507 [14 P. 190, 1 Am.St.Rep. 75]. Plaintiff, on the

other hand, points out that in *Lawrence Barker, Inc.* v. *Briggs* (1952) 39 Cal.2d 654, 664-665 [248 P.2d 897], the court expressly held that a lessor *could* maintain an ejectment action without terminating the lease where the written lease contained a provision reserving to the lessor the right to reenter the premises, in the event of the tenant's default, while continuing to hold the tenant to his obligation to pay rent to the end of the term of the lease.

The holding in the *Lawrence Barker* case controls the instant action, since the parties' written lease contained a provision to the effect that "If the lessee shall be in default in the performance of any condition or covenant herein contained or shall abandon, vacate or surrender said premises, besides other remedies or rights the lessor may have, it shall be optional with the lessor to re-let or re-lease the said premises (with or without terminating this lease and/or taking possession of the demised premises by court action or otherwise) for such rent, for such time and upon such terms as the lessor may see fit, and, if a sufficient sum shall not be thus realized during the term originally provided for by this lease after paying the expenses of such re-letting, or re-leasing and collecting to satisfy the rent hereby reserved, the lessee agrees to satisfy and pay any deficiency, month by month."

■ Defendants' second and final contention on appeal is that the evidence conclusively establishes that when they vacated the leased premises on January 9, 1965, they did so only because plaintiff had constructively evicted them by interfering with their quiet enjoyment of the premises. Defendants specifically assert that in August 1964, at a time when defendants deny that they were in default on the rental payments due plaintiff, plaintiff began collecting rent and utility payments directly from one of defendants' subtenants, Gonzales, and plaintiff also thereafter attempted to negotiate new leases directly with certain of defendants' subtenants. Defendants contend that plaintiff's conduct in this regard was totally unauthorized and improper as long as defendants were not in arrears on the rental payments. They further assert that even if it be assumed that they were in arrears on the rent, plaintiff had no right to collect rent directly from a subtenant without first having brought an action to regain possession of the premises and to have a receiver appointed. Defendants conclude that since plaintiff did not pursue its available legal remedies but instead wrongly resorted to self-help, defendants were constructively evicted as a matter of law when they abandoned the premises on January 9, 1965, and the lease was therefore effectively terminated on that date.

The basic difficulty with defendants' position is that they are, in essence, merely rearguing disputed factual issues which the trial court has already

resolved in a manner unfavorable to them. The court, as noted above, expressly found that plaintiff did not deny defendants Patterson the quiet use and possession of the leased premises and also found that at all times subsequent to April 29, 1964, plaintiff was entitled, under a written assignment, to collect the rent from defendants' subtenant, Gonzales, and apply it against defendants' rental obligation. The record furnishes ample support for these findings.

On April 29, 1964, as part of a settlement of a prior unlawful detainer action which plaintiff had commenced against defendants Patterson in 1963, a document entitled "Assignment of Rents" was signed by defendants Patterson. The instrument in question advised defendants' subtenant, Gonzales, that defendants had assigned to plaintiff "all rentals now or hereafter due" from Gonzales to defendants. The document further provided that the assignment should remain in full force and effect until Gonzales was notified to the contrary "by or on behalf of . . . [plaintiff] and by [defendants Patterson], jointly." The document does not state that the assignment should be terminated upon any specific date or upon the occurrence of any specified conditions. Since the record contains no evidence that plaintiff and defendants Patterson ever jointly notified Gonzales that the assignment was no longer in effect, plaintiff was merely enforcing its rights under the written assignment when it collected rents directly from Gonzales and such conduct obviously did not in any way interfere with defendants' quiet enjoyment of the premises. ■ There is likewise no merit to defendants' contention that plaintiff was not entitled to collect rents directly from Gonzales without first bringing an action to regain possession of the premises and to have a receiver appointed. *Malsman v. Brandler* (1964) 230 Cal.App.2d 922 [41 Cal.Rptr. 438], upon which defendants rely in support if this argument, involved a deed of trust containing provisions assigning the rents to the trustee as security for the debt and authorizing the beneficiary, in the event of a default in payments by the trustor, to take possession of the property and collect the rents. The court held that the latter provision did not create an absolute assignment of rents to take effect upon the trustor's default and that the beneficiary's power to collect the rents could only be exercised after the beneficiary had taken possession of the property by the appointment of a receiver. The instant case involves a situation totally dissimilar from that present in *Malsman,* since defendants Patterson signed an absolute assignment directing Gonzales to pay the rent due under his sublease directly to plaintiff.

■ With regard to defendants' contention that plaintiff ought not to have collected utility payments from Gonzales, it is true that the written *assignment of April 29, 1964,* did not cover utility, as opposed to rental,

payments. However, defendants have failed to point to any evidence that they ever specifically objected to plaintiff's collecting utility payments from Gonzales, and they have likewise failed to contend that the payments in question were not in fact applied by plaintiff to the payment of Gonzales' utility bills. Under these circumstances and in view of the fact that plaintiff was already lawfully exercising its right to collect Gonzales' rent, the trial court clearly must be upheld as to its finding that plaintiff did not interfere with defendants' quiet enjoyment of the premises, even though plaintiff did collect the utility payments in question without express authorization to do so.

██ Defendants' other allegations relative to plaintiff's interference with defendants' quiet enjoyment of the premises are all based upon the fact that plaintiff attempted to negotiate new leases directly with defendants' subtenants commencing in November 1964. Unfortunately for defendants, their own calculations relative to the rental payments made by them show that they were in default well before November 1964, unless, as defendants contend, plaintiff was under an absolute duty to exhaust a security deposit in the amount of two months' rent before treating defendants as having defaulted in their rental payments. However, plaintiff refers to the provision in the parties' written lease that the deposit in question should serve "[a]s security to the faithful performance of the lease" and further, that such deposit "*may* be withdrawn" by plaintiff-lessor in the event defendants failed to comply with their obligations under the lease (italics supplied). The language of the lease placed plaintiff under no duty to apply the deposit toward defendants' unpaid rent but merely gave plaintiff the option to do so. (*Adjustment Corp.* v. *Marco* (1929) 100 Cal.App. 338, 343 [279 P. 1006].) The evidence shows that plaintiff did not elect to apply the security deposit to defendants' arrearages in rent and that said deposit had not been withdrawn from the bank even at the time of trial. Under such circumstances, plaintiff was entitled to treat defendants as being in default on their rental payments well prior to November 1964 and was entitled, under the lease, to relet the premises on defendants' behalf, without terminating the lease, and hold defendants liable for any deficiency. Plaintiff's negotiations with defendants' subtenants were obviously undertaken for precisely that purpose

██ In their reply brief, defendants contend that plaintiff was required under the written lease to pay defendants the interest accruing on the security deposit as long as plaintiff chose to retain same. They assert that the uncontradicted evidence shows that plaintiff failed to make the required quarterly payments of $85.88, commencing with the payment due on September 30, 1964. Defendants further assert that some 16 interest payments of $85.88 each have since accrued and become payable and that the trial court erred in failing to credit defendants with the amount of interest due them despite their request for a finding to that effect.

The record shows that defendant Norwood Patterson testified that he had received no interest payments subsequent to July 29, 1964, and that H. P. Chang, who handled plaintiff's bank accounts, testified that there had been no withdrawals of any kind from the account where defendants' security deposit had been placed on July 29, 1964. Since the parties' written lease does provide that the interest on the security deposit should be paid to defendants "at interest intervals" and since the trial court found that the lease had not been terminated and was still in effect, the court should have complied with defendants' request and made a finding to the effect that defendants were entitled to receive credit for the interest which had accrued and would in the future accrue so long as the security deposit is retained by plaintiff.

The appeal of Golden Gate Broadcasting Co. having been abandoned, its appeal is dismissed.

The cause is remanded to the trial court with directions to make additional findings and to modify its judgment so as to take into account the interest which defendants were entitled to receive on the security deposit, and as so modified the judgment is affirmed. Respondent to recover costs on appeal.

Agee, J., and Taylor, J., concurred.