FILED
United States Court of Appeals
Tenth Circuit

February 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FAIRFAX PORTFOLIO, LLC,

        Plaintiff/Counter-
        Defendant-Appellant,

v.

OWENS CORNING INSULATING
SYSTEMS, LLC,

        Defendant/Counter-
        Claimant-Appellee.

No. 12-3126
(D.C. No. 2:11-CV-02007-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

This appeal involves a landlord-tenant dispute that was removed from a Kansas state court and filed in the District of Kansas based on diversity of citizenship. The landlord is plaintiff/counter-defendant Fairfax Portfolio, LLC (Fairfax), and the tenant is defendant/counter-claimant Owens Corning Insulating

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Systems, LLC (Owens Corning).  In the district court proceedings, the parties filed cross-motions for summary judgment.  In addition, Fairfax filed a motion to certify a question of law to the Kansas Supreme Court concerning its claim that Owens Corning was a holdover tenant and thus liable for holdover rent under the terms of the parties' lease agreement.

The district court denied Fairfax's motion to certify and entered summary judgment in favor of Owens Corning, concluding that Owens Corning was not liable for holdover rent under the provisions of the parties' lease agreement and that Fairfax had failed to preserve a separate claim against Owens Corning for a holdover tenancy by operation of law.  The court therefore entered a judgment in favor of Owens Corning on its counterclaim and directed Fairfax to return Owens Corning's security deposit in the amount of $42,102.08.  The court also awarded Owens Corning prejudgment interest and reasonable attorneys' fees and costs.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.  We also deny the renewed motion to certify that Fairfax has filed in this court pursuant to 10th Cir. R. 27.1 and Kan. Stat. Ann. § 60-3201.

## A.  Factual Background

In January 2008, Fairfax and Owens Corning entered into a lease agreement pursuant to which Fairfax agreed to lease a warehouse storage facility to Owens Corning.  Although the initial term of the lease terminated on December 3, 2008, the

parties subsequently executed an amendment to the lease agreement which extended

the term of the lease until December 3, 2009.

Under the terms of the lease agreement, Owens Corning was required to

maintain the premises in good condition and to repair any damage it caused to the

premises. *See* § 10 of Lease Agreement (Aplt. App. at 50). In particular, the lease

agreement specified that "[a]ny damage to building columns and walls as a result of

Tenant's use of the Premises shall be repaired by Tenant promptly after such damage

occurs and no later than expiration of the term of the Lease." *Id.* § 32 (Aplt. App.

at 60). The lease agreement also contains a section entitled "Surrender of Premises

and Holding Over." *Id.* § 18 (Aplt. App. at 57). The latter section provides, in

relevant part, as follows:

> Upon the expiration . . . of this Lease, . . . Tenant shall
> immediately surrender the Premises to Landlord, together with all
> alterations and improvements as provided herein, in broom-clean
> condition and in good order, condition and repair, except for ordinary
> wear and tear . . . .
>
> If Tenant holds over after the expiration of the Initial Term or
> Renewal Term, if applicable, Tenant shall become a tenant on a
> month-to-month tenancy at monthly rent equal to 150% of the Rent in
> effect during the last full month of the preceding term.

*Id.*

When the amended lease agreement expired in December 2009, it is

undisputed that Owens Corning fully vacated the leased premises and returned the

keys to the premises to Fairfax. It is also undisputed that Owens Corning did not use

- 3 -

the leased premises as a warehouse storage facility at any time after December 3, 2009.

However, during an inspection of the leased premises following Owens Corning's departure, Fairfax discovered a number of items on the property that were in need of repair. Specifically, according to Fairfax, "[t]he property had sustained substantial structural damage to areas including its walls, windows, and support beams." Aplt. Br. at 4 (citing Aplt. App. at 74-75). To remedy this situation, Fairfax and Owens Corning subsequently agreed that Owens Corning would repair the damaged items at its own expense. Towards this end, Fairfax returned the keys to the leased premises to Owens Corning, and Owens Corning hired contractors to perform the repair work. Ultimately, Owens Corning paid its contractors over $40,000 to make repairs to the leased premises. The repairs were completed to Fairfax's satisfaction and Owens Corning returned the keys to the premises to Fairfax on April 19, 2010.

In November 2010, Fairfax filed a lawsuit against Owens Corning in a Kansas state court, alleging that: (1) "Defendant was a 'holdover tenant' during the time that defendant had possession of the premises to repair the damage"; and (2) "Pursuant to the terms of the lease, defendant owes rent during the holdover tenancy at the rate of 150% of the stated monthly rent." Aplt. App. at 13. Fairfax claimed it was therefore entitled to a judgment against Owens Corning in the amount of $118,240.62, "after giving credit for [Owens Corning's] security deposit." *Id.* As noted above, Owens

Corning removed the case to the District of Kansas based on diversity of citizenship, and it then filed a counterclaim against Fairfax seeking the return of its security deposit, alleging it was not liable to Fairfax for any holdover rent during the time that the leased premises were being repaired.

## B. The Pretrial Order

In September 2011, the district court entered a pretrial order. Because it is relevant to the district court's summary judgment rulings, we will briefly summarize the pertinent parts of the pretrial order.

As a starting point, the pretrial order stated that it "shall supersede all pleadings and control the subsequent course of this case. It shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice." R., Doc. 28 at 1.

Next, under the section of the pretrial order entitled "Nature of the Case," Fairfax stated it was "claim[ing] damages for breach of a lease contract." *Id.* Fairfax explained its theory of the case under the section of the pretrial order entitled "Plaintiff's Contentions." According to Fairfax:

> The lease contains provisions for payment of rent, and that includes rent to be paid by the defendant as a "holdover tenant" if the defendant remains in possession of the building after the expiration of the lease. The lease required the tenant to repair any damage before surrendering the premises to the landlord.
>
> The lease expired on December 3, 2009. The lease provided for rent in the sum of $32,068.54 per month. The lease provided that the rent to be paid by a 'holdover tenant' was 150% of the lease rate, or $48,102.81 per month. The tenant surrendered possession of the

- 5 -

building to the landlord on April 19, 2010. The tenant was a 'holdover tenant' for five months, so the holdover rent that's owed is $160,342.70.

*Id.* at 3.

Finally, under the section of the pretrial order entitled "List of Plaintiff's Theories of Recovery," Fairfax "assert[ed] that it [was] entitled to recover from the defendant based on breach of contract." *Id.* at 5. Under the following section of the pretrial order entitled "Essential Elements of Plaintiff's Theory of Recovery (breach of contract)," Fairfax stated that it had the burden of proving that: (1) "Defendant remained in possession of the commercial warehouse until April 19, 2010"; and (2) "As a result, defendant was a 'holdover tenant' and owes rent as "holdover tenant[,]" under the lease." *Id.* at 5-6.

## C. Fairfax's Summary Judgment Arguments

As noted above, the parties filed cross-motions for summary judgment in the district court proceedings. Although we do not need to summarize all of the arguments advanced by the parties in support of their respective motions, the memorandum that Fairfax submitted to the district court in support of its motion for summary judgment contains arguments that are pivotal to our disposition of this appeal. As a result, we need to briefly summarize those arguments.

In its summary judgment memorandum, Fairfax began its analysis by noting that "there is very little available on the issue of what exactly constitutes a holdover tenancy under Kansas law when leased commercial property has been left in dire

need of repair following the lease's termination." Aplt. App. at 35. But according to Fairfax:

> Other courts have explored the issue in different ways. The two main analyses involve 1) the rules of contract construction; or 2) an investigation into the magnitude of the damage. Here, both approaches are satisfied: first, the lease specifically provides for the possibility of a holdover tenancy should the property not be returned to plaintiff in the proper condition; second, the damage to the property was significant. Therefore, defendant should be treated as a holdover tenant.

*Id.* Fairfax then proceeded to analyze this case under both approaches in two separate sections of its memorandum. *Id.* at 36-43.

In the first section of its memorandum, Fairfax addressed the provisions of the lease agreement, beginning its analysis by stating that "[t]he lease agreement includes a clause that specifically provides for the possibility of a holdover tenancy. That provision was triggered when the premises were not returned to plaintiff in good condition as required by the lease agreement." *Id.* at 36. After discussing the decisions in *Prospect Hill Acquisition, LLC v. Tyco Electronics Corp.*, 414 F.3d 181 (1st Cir. 2005), *Pinole Valley Trucking, Inc. v. Texas Development Co.*, No. 01-08-00599-CV, 2009 WL 1025750 (Tex. App. April 16, 2009) (unpublished), and *Swanson v. Public Storage, Inc.*, No. 00-2490-JWL, 2001 WL 584457 (D. Kan. May 18, 2001) (unpublished), Fairfax then summarized its "contractual" arguments based on the provisions of the lease agreement as follows:

> Here, the lease agreement specifically provides for the possibility of a holdover tenancy. Under the lease, defendant was required to "maintain the premises in a condition and repair commensurate with buildings of a similar class and character," reasonable wear and tear

- 7 -

excepted.  Defendant was expected to maintain on-site equipment, machinery, and fixtures, along with the HVAC systems, floors, walls, and doors.  Furthermore, the lease provides that, upon expiration of the lease, defendant was required to return possession of the subject leased property to plaintiff "in good order, condition, and repair," ordinary wear and tear excepted.  If these requirements were not met, defendant would become a holdover tenant.

When defendant first tried to return possession of the premises to plaintiff, it was in a severe state of disrepair.  The damage included, but was not limited to, broken fixtures and signs, along with damage to the walls, the floor, roll up doors, and a number of support columns.  Some of the damage constituted a safety hazard.  Much of that damage, including the damage to the walls, floor, and roll up doors, was specifically left to the maintenance of defendant under the lease provisions.  This was more than just ordinary wear and tear.  Thus, according to the lease agreement, defendant became a holdover tenant when it failed to return the premises to plaintiff in proper condition at the expiration of the lease.

Aplt. App. at 38-39.

The second section of Fairfax's summary judgment memorandum was entitled "Defendant was a holdover tenant because its treatment of the property resulted in extreme damage requiring significant structural repairs." *Id.* at 39.  In this section, Fairfax discussed the decisions in *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884 (Tex. App. 2009), *Creative Cabinets, Inc. v. Jorrie*, 538 S.W.2d 207 (Tex. App. 1976), *Longmier v. Kaufman*, 663 S.W.2d 385 (Mo. Ct. App. 1983), and *Consumers Distributing Co. v. Hermann*, 812 P.2d 1274 (Nev. 1991) (per curiam).  It then summarized its "magnitude of the damage" arguments as follows:

This case is more like *Cammack the Cook*, *Creative Cabinets*, and *Longmier*.  Here, defendant's treatment of the property resulted in significant damage.  Upon inspection, plaintiff discovered damage including broken fixtures, thermostats and signs, along with damage to

the walls, the floor, and support columns. In contrast to *Consumers*, this amounted to major structural damage. Two contractors were required to make all of the appropriate repairs. Many of the columns that supported the roof had to be restored. At one point, the roof required extra support while the columns were repaired. A structural engineer was required to assess whether the repair to the damaged columns was sufficient to support the weight of the roof; an engineer was also necessary to inspect the welding of the columns. This was not simple touch-up work.

Aplt. App. at 42-43.

In sum, Fairfax argued to the district court that it was entitled to summary judgment on the holdover issue based on two separate and distinct theories. First, Fairfax argued that it was entitled to summary judgment based on the provisions in the lease agreement. Second, Fairfax argued that it was entitled to summary judgment by operation of law due to the extreme nature of the damage that Owens Corning allegedly caused to the leased premises. As explained more fully below, the district court referred to the latter theory as Fairfax's "constructive holdover" theory.

### D.  The District Court's Summary Judgment Rulings

The district court entered two orders regarding the parties' cross-motions for summary judgment. The first order was entered on January 17, 2012, and the second order was entered on April 5, 2012. Both orders are germane to this appeal, and we therefore discuss them in turn.

### 1.  The Order Entered by the District Court on January 17, 2012

In its first summary judgment order, the district court stated that "[t]he issue before the court—as framed by plaintiff—is whether, under Kansas law, a tenant

- 9 -

who, at the expiration or termination of a lease of a commercial warehouse, retains possession of the property in order to repair structural damage is considered a 'holdover tenant' for the time necessary for the tenant to make the repairs." Aplt. App. at 372. Although the court acknowledged that "the Kansas Supreme Court has not decided the particular question presented by this set of facts," *id.* at 375, the court nonetheless denied Fairfax's motion to certify a question of law to the Kansas Supreme Court under Kan. Stat. § 60-3201. The court explained that it "is often required to predict how the Kansas courts would decide particular questions of state law," Aplt. App. at 375, and the court concluded that "certification would [not] conserve the time, energy, and resources of the parties or the court," *id.*

Having denied the motion to certify, the court then proceeded to address the merits of Fairfax's argument that it was entitled to summary judgment on its claim for holdover rent based on the terms of the lease. As the court noted, Fairfax "argue[d] that it [was] entitled to summary judgment because the terms of the lease create[d] a holdover tenancy where property [was] not returned in proper condition." *Id.* at 376. The court rejected this argument, however, because it determined that "[t]he terms of the lease do not unambiguously dictate that defendant should be treated as a holdover tenant on the facts presented." *Id.* The court explained its reasoning as follows:

> Section 18 of the lease agreement requires defendant, upon expiration of the lease term, to surrender the property in good repair. It then states, in the next paragraph, that a tenant "hold[ing] over" after the expiration of the lease becomes a month-to-month tenant at a rate of

- 10 -

150 percent rent. Although these surrender conditions and holdover provisions appear in the same section of the lease agreement, they are in two distinct paragraphs. Plaintiff points to this proximity for the proposition that failure to surrender the property "in broom-clean condition"—as opposed to mere failure to surrender—triggers the holdover provision. The court is unconvinced.

The court finds that the contract is not ambiguous. Ambiguity does not arise unless there is genuine uncertainty as to which of two or more possible meanings is proper; where in common sense there is no ambiguity, the court will not strain to create ambiguity. *Crescent Oil Co., Inc., v. Federated Mut. Ins. Co.*, 888 P.2d 869, 872-73 (Kan. Ct. App. 1995). Despite plaintiff's arguments, the plain and ordinary meaning of the term "holding over" in this section of the lease agreement refers to the failure to surrender property, not failure to make required repairs or failure to surrender *in a particular condition. See* 49 Am. Jur. 2d § 354 (1995) (stating that "[a] tenant who does not abandon or relinquish the premises after the lease expires or is lawfully declared terminated by the lessor, but who remains in possession, is holding over")[1]; Black's Law Dictionary (9th Ed. 2009) (defining "holdover tenant" as "[a] person who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance"). Plaintiff offers no evidence that the parties intended any other meaning, and it would defy common sense to read section 18 as triggering the holdover provision where a tenant has surrendered the property but makes certain repairs after the expiration of the lease.

*Id.* at 378.

The court next addressed "the issue of whether, putting aside the terms of the lease, the defendant should nevertheless be treated as a holdover tenant by operation of law." *Id.* at 379. As the court noted, this issue arose during the parties' summary

---

[1]    We note that the language quoted by the district court from 49 Am. Jur. 2d § 354 is now located in 49 Am. Jur. 2d § 275.

judgment briefing, and the court referred to it as Fairfax's "constructive holdover" theory.

The court began its analysis of Fairfax's "constructive holdover" theory by denying both parties' requests for summary judgment on the theory. According to the court, the cases argued by the parties in the summary judgment briefing indicated that the question of whether to impose a holdover tenancy by operation of law in a repair case depends on the "nature of the damage" to the leased property and the "usability and/or leasability of the property" during the time that the tenant is making repairs, and the court determined that "these facts are disputed" in this case. *Id.* This did not end the court's inquiry, however, because the court went on to note that Fairfax had only asserted a claim for breach of contract in the pretrial order. As a result, "[e]ven if the Kansas courts would permit a landlord to pursue damages based on a 'constructive holdover' theory, the court [was] uncertain that such a theory can arise from a breach of contract claim." *Id.* at 381. The court "therefore directed [Fairfax] to show cause why it should be permitted to pursue this 'constructive holdover' theory at trial," and it set a briefing schedule for both sides to submit briefs on the issue. *Id.*

## 2. The Order Entered by the District Court on April 5, 2012

At the time the district court entered its second summary judgment order, the court had received the parties' briefs concerning the issue of whether Fairfax should

- 12 -

be permitted to pursue a "constructive holdover" theory at trial. As a result, the court was "ready to rule" on that issue. *Id.* at 398.

Before addressing Fairfax's "constructive holdover" theory, however, the court summarized its earlier ruling regarding Fairfax's "contractual holdover" theory. Specifically, the court reiterated that it "held that the contract is not ambiguous: the plain and ordinary meaning of the term 'holding over' in Section 18 of the lease agreement refers to the failure to surrender property, not failure to make required repairs or failure to surrender *in a particular condition*." *Id.* at 400.

Given the district court's holding concerning Fairfax's "contractual holdover" theory, Fairfax's claim for holdover rent depended solely on whether the court would permit it to pursue a "constructive holdover" theory. In its second summary judgment order, the court decided not to permit Fairfax to pursue such a theory. The court's reasoning was as follows:

> Plaintiff chose to limit its case initially by pursuing the narrow theory that defendant breached the holdover provision in the lease. (Its reasoning for doing so could be that success on this claim would entitle it to 150 percent rent as opposed to some lessor amount). Plaintiff might have argued, on the undisputed facts, a general breach, or that defendant breached other obligations under the lease—such as the obligation to maintain the premises under Section 10A or to repair damage as required in Section 32. But plaintiff has never raised these as grounds for relief. As defendant notes, plaintiff initially pleaded, and consistently pursued, a single theory that the express holdover provision in the lease required defendant to pay rent at 150% of the lease rate for every month that the repair construction continued after expiration of the lease. The court has held that the holdover provision plaintiff seeks to enforce is not triggered by the facts.

- 13 -

The court does not believe that plaintiff should now be permitted to proceed on a theory of "constructive holdover," which first appeared in briefing on summary judgment. The court finds that this is merely an attempt to use common law concepts—which are not clearly authorized under Kansas law—to pursue the benefit of the 150 percent penalty contained in the holdover provision that the court has already held is inapplicable here.

*Id.* at 402-03 (footnote omitted).

Because the district court rejected both Fairfax's "contractual" and its "constructive" holdover theories, the court concluded in its second summary judgment order that Owens Corning was entitled to summary judgment on Fairfax's claim for holdover rent and on its counterclaim for the return of its security deposit. The court therefore entered a judgment in favor of Owens Corning in the amount of $42,102.08.

## E.  Disposition of This Appeal

We commend the district court for its thorough and well-reasoned summary judgment orders, and we summarily affirm the rulings of the district court.

First, with regard to Fairfax's "contractual holdover" theory, we conclude that the district court correctly applied Kansas law in determining that the lease agreement "is not ambiguous: the plain and ordinary meaning of the term 'holding over' in Section 18 of the lease agreement refers to the failure to surrender property, not failure to make required repairs or failure to surrender *in a particular condition*." *Id.* at 400. We also agree that it is undisputed that Owens Corning vacated and surrendered the leased premises to Fairfax in December 2009. In fact, Fairfax

specifically alleged in its September 9, 2011, Memorandum in Support of Motion for Summary Judgment that "[Owens Corning] vacated the premises in December of 2009." *Id.* at 26, ¶ 4. Accordingly, we affirm the district court's entry of summary judgment in favor of Owens Corning on Fairfax's "contractual holdover" theory, and we see no reason to certify a question of law to the Kansas Supreme Court.

Second, in the briefs it has submitted to this court, Fairfax has utterly failed to challenge the district court's determination that it is barred from pursuing its "constructive holdover" theory because it failed to preserve the theory in the pretrial order. As a result, Fairfax has waived its right to appeal that ruling. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 n.10 (10th Cir. 2004) (concluding that appellant waived its right to appeal rulings of district court that it did not substantively address in its opening brief); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."). In addition, because this waiver is a matter of federal law, we again see no reason to certify a question of law to the Kansas Supreme Court.

The judgment of the district court is affirmed. Fairfax's motion to certify is denied.

Entered for the Court


Wade Brorby
Senior Circuit Judge